AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Instagram account username "iamisaaccarreno"
Phone No.: +1(619) 940-9591
(Target Account)

Case No. **'23 MJ00355**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8, U.S.C., Sec. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of **90** days *(give exact ending date if more than 30 days:* **05/01/2023** *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

CBP Enforcement Officer Adriana Rosas-Carranza
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by **telephone** *(specify reliable electronic means)*.

Date: **01/31/2023**

*Judge's signature*

City and state: **San Diego, CA**   Hon. Karen S. Crawford U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A

# PROPERTY TO BE SEARCHED

This warrant applies to information associated with the following Instagram user IDs and/or account names:

> Instagram Account username "iamisaaccarreno"
> Phone No.: +1(619) 940-9591
> (Target Account)

that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California. Meta Platforms Inc. is an Internet Service Provider with its primary computer information systems and other electronic communications and storage systems, records and data located at:

> 1601 Willow Road
> Menlo Park, California 94025

## ATTACHMENT B

### PARTICULAR THINGS TO BE SEIZED

I.   **Service of Warrant**

The officer executing the warrant shall permit Meta Platforms, Inc., as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

II.  **Information to be disclosed by Instagram**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc., regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms, Inc. is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)  Contact and personal identifying information, including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)  Activity logs for the account and all other documents showing the user's posts and other Instagram activities October 8, 2022, up to and including December 8, 2022;

(c)  Photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from October 8, 2022, up to and including December 8, 2022, including Exchangeable Image File

  ("EXIF") data and any other metadata associated with those photos and videos;

(d) Profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Instagram user identification numbers; groups and networks of which the user is a member, including the groups' Instagram group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Instagram applications;

(e) Records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) Other records and contents of communications and messages made or received by the user October 8, 2022, up to and including December 8, 2022, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) "Check ins" and other location information;

(h) IP logs, including all records of the IP addresses that logged into the account;

(i) Records of the account's usage of the "Like" feature, including all Instagram posts and all non-Instagram webpages and content that the user has "liked";

(j) Information about the Instagram pages that the account is or was a "fan" of;

(k) Past and present lists of friends created by the account;

(l) Records of Instagram searches performed by the account from October 8, 2022, up to and including December 8, 2022;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) Privacy settings and other account settings, including privacy settings for individual Instagram posts and activities, and all records showing which Instagram users have been blocked by the account;

(p) All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services and records of actions taken.

Meta Platforms, Inc., is hereby ordered to disclose the above information to the government within **7 days** of issuance of this warrant.

### III. Search of the Data

The search of the data supplied by the ISP pursuant to this warrant will be conducted by United States Customs and Border Protection as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of October 8, 2022, up to and including December 8, 2022, and to the seizure of:

a. Communications, records, and attachments tending to discuss or establish violations of 8 U.S.C. § 1324 (a)(2)(B)(iii).

b.  Communications, records, and attachments tending to identify Defendant Isaac Armando CARRENO and any co-conspirators involved in the activities in III(a) above; and

c.  Communications, records, and attachments that provide context to any communications described above, such as electronic communications sent or received in temporal proximity to any relevant electronic communications and any electronic communications tending to identify users of the subject accounts;

which are evidence of violations of 8 U.S.C. § 1324 (a)(2)(B)(iii).

# AFFIDAVIT

I, Customs and Border Protection Officer Adriana Rosas-Carranza, being duly sworn, hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. This affidavit is offered in support of an application by the United States of America for a warrant to search the electronic files maintained by Meta Platforms, Inc. and associated with the following Instagram account:

> Instagram Account username "iamisaaccarreno"
> Phone No.: +1(619) 940-9591
> (Target Account)

that is stored at premises owned, maintained, controlled, or operated by Meta Platform, Inc., a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta Platform, Inc. to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with Target Account from October 8, 2022, through December 8, 2022, for items that constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 8, United States Code, § 1324(a)(2)(B)(iii) – Bringing in Aliens Without Presentation, as described in Attachment B.

## TRAINING AND EXPERIENCE

1. have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal

1

Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twenty years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

2.   During my tenure with CBP, I have participated and have been case agent in the investigation of various alien smuggling organizations involved in the smuggling of undocumented aliens. Through my training, experience, and official interactions with other law enforcement officers experienced in human smuggling investigations, I have gained a working knowledge of the operational habits of alien smugglers, in particular those who attempt to smuggle undocumented aliens into the United States from Mexico at United States Ports of Entries located within the Southern District of California. I have taken lead and participated in investigations concerning the methods and practices used by alien smugglers and their operating methods in the crimes described above. As an Enforcement Officer, I am currently assigned to the specialized investigative Criminal Enforcement Unit (Prosecutions) within the Bureau of Customs and Border Protection. The Unit is responsible for prosecuting complex immigration violation(s) and other federal violations in connection to the U.S. Attorney's Office.

3.   The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens, and social media evidence, such as instant messaging via social media apps on cellphones. For example, drivers and passengers responsible for transporting illegal aliens are typically in real-time

2

contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. Moreover, in my training and experience, recruiters often find and connect with drivers on social media, such as Instagram, and continue their contacts through instant messaging services offered by the social media platform. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violation of Title 8, United States Code § 1324(a)(2)(B)(iii) – Bringing in Aliens Without Presentation have been committed by Isaac Armando CARRENO (Defendant). There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

3

## FACTS SUPPORTING PROBABLE CAUSE

6.  On December 8, 2022, at approximately 12:01 A.M., Defendant, a United States citizen, applied for admission into the United States from Mexico via the San Ysidro, California Port of Entry primary vehicle lanes as the driver, registered owner, and sole visible occupant of a black Volkswagen Passat bearing California license plates. Upon inspection before a CBP Officer, Defendant presented his California Identification card and said he was going to Chula Vista, California with nothing to declare from Mexico. The CBP Officer conducted a cursory inspection of the vehicle and discovered two individuals concealed inside the trunk. Defendant was placed in handcuff restraints and escorted to the security office. The vehicle was driven to the secondary inspection lot by another officer.

7.  At approximately 1:31 A.M. during a video-recorded interview, Defendant was advised of his *Miranda* Rights and elected to make a statement. Defendant denied knowledge of the individuals concealed in his vehicle. Defendant stated he was in Mexico visiting a female, "Sharlene," whom he met through Instagram two months ago. Sharlene lives in Tijuana, and he has visited her approximately four times since they met online. Defendant stated that on the night of his arrest, he crossed into Mexico at approximately 9:00 P.M. and drove to Plaza Alameda, located in the Otay Mesa area of Tijuana. Defendant stated he parked and locked his vehicle in a secure area. According to Defendant, he met with Sharlene to have tacos with her at a nearby taco stand; he spent about an hour and a half with Sharlene, then, her brother came to pick her up. Defendant drove to a nearby OXXO store where he purchased some groceries and then headed to the border. Defendant stated he did not know there were people hiding in the trunk and could

not give an explanation how the individuals were able to climb into the trunk even though his car was locked the whole time.

8. During video-recorded interviews, the Material Witnesses (MW) stated they are citizens of China without lawful documents to enter the United States. MW1 stated she made the smuggling arrangements with an unknown person for an undisclosed amount to be smuggled into the United States. MW2 stated she made the smuggling arrangements and was going to pay $80,000.00 USD to be smuggled into the United States. The Material Witnesses both stated they got in the trunk of a car at a shopping plaza that night to be driven across the border, that they were going to unknown places in the United States.

9. Defendant was arrested and charged with Alien Smuggling in violation of 8 U.S.C. § 1324.

10. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe the information on Instagram can contain messages, telephone numbers, contact name, messages, pictures, and other digital information retained by Meta Platforms Inc.

11. On December 8, 2022, Defendant gave consent for his cellphone to be searched by CBP authorities. A search of Defendant's cellphone contents revealed messages from the Instagram account with the vanity name of "iamaisaaccarreno" associated with the cellphone. There is one message thread in particular with an account with the vanity name "Sherlyn Alcaraz" from the night of Defendant's arrest. The thread contains messages from Defendant updating the other account that he is on his way to the shopping plaza, and later, the other account messaging Defendant to "just be careful" and asking whether there is a lot of traffic at the border. Based on these messages and the

5

timing, I believe these are messages between Defendant and "Sharlene," the female he met for tacos at the shopping plaza. However, based on my training and experience, the thread on Defendant's cellphone does not capture the entirety of their messages. According to Defendant's post-arrest statement, he had met Sharlene/Sherlyn two months ago and that he had visited her four times before. Therefore, there is reason to believe that Defendant has messages with her dating back to October 2022.

12. Moreover, based on my training and experience, and in consideration of the timing and location of their meeting with the Material Witnesses' statements, there is probable cause to believe that Sharlene/Sherlyn may have been coordinating with Defendant in this alien smuggling event.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

13. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

**Instagram**

14. Meta Platforms Inc. owns and operates a free-access social networking website, Instagram, that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

15. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search

6

for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo; location information; and other information). A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

16. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

17. Instagram asks users to provide basic identity and contact information upon registration and allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

18. Instagram allows users to have "friends", which are the individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

19. Instagram also allows users to "follow" other users, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following them.

7

20. Instagram allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or through Instagram.

21. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in user's feed, search history, or profile.

22. Users of Instagram may also search Instagram for other users or particular types of photos or other content.

23. For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

24. Instagram also collects and maintains "cookies", which are small text files containing a string of numbers that are placed on user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, remember preferences, and to ensure advertisements are relevant to user's interest.

25. Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

26. Instagram also collects other data associated with user content. For example,

8

Instagram collects any "hashtags" associated with user content (i.e. keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

27. Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

28. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as geo location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under

investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

29. Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the Target Account, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the Target Account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

30. Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. The personnel of Instagram are not. It would be inappropriate and impractical for federal agents to search the vast computer network of Instagram for the relevant accounts and then to analyze the contents of those accounts on the premises of Instagram. The impact on Instagram's business would be disruptive and severe.

31. Therefore, I request authority to seize all content, including electronic communications and attachments, stored instant messages, stored voice messages, photographs, and any other content from the Target Account, as described in Attachment B. To accomplish the objective of the search warrant with a minimum of interference with the business activities of Instagram, to protect the rights of the subject of the investigation and to effectively pursue this investigation, authority is sought to allow Instagram to make a digital copy of the entire contents for the account subject to seizure. That copy will be provided to me or to any authorized federal agent. The copy will be forensically imaged, and the image will then be analyzed to identify communications and other data subject to seizure pursuant to Attachment B. Relevant data will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

32. Analyzing the data to be provided by Instagram may require special technical skills, equipment, and software. It may also be very time-consuming. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Certain file formats also do not lend themselves to keyword searches. Keywords search text. Many common electronic communications, database and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text. The data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically.

33. Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keywords need to be modified continuously based upon the results obtained. The personnel conducting the examination will complete the analysis within ninety (90) days of receipt of the data from the service provider, absent further application to this court.

## REQUEST FOR DELAYED NOTICE

34. This is an ongoing investigation of which the target is aware. It is very likely, based upon the above, that evidence of the crimes under investigation exists on the Target Account. There is reason to believe, based on the above, that premature disclosure of the existence of the warrant will result in destruction or tampering with that evidence and seriously jeopardize the success of the investigation. Accordingly, it is requested that this warrant and its related materials be sealed until further order of the Court. In addition, pursuant to Title 18, United States Code, Section 2705(b), it is requested that this Court order Instagram not to notify anyone of the existence of this warrant, other than its personnel essential to compliance with the execution of this warrant for 90 days, until May 1, 2023, absent further order from this court.

//
//
//
//
//
//
//
//

## CONCLUSION

35. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Account will yield evidence, fruits, and instrumentalities of violations, or attempted violations, of with violations of Title 8, United Sates Code, Section 1324(a)(2)(B)(iii) – Bringing in Aliens Without Presentation. Accordingly, I request the Court issue warrants authoring law enforcement to search the item described in Attachment A.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
CBP Officer Adriana Rosas-Carranza
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 31st day of January, 2023.

_____
Hon. Karen S. Crawford
United States Magistrate Judge